UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | Crim. No. 14-141 (CRC) |
| | ) | |
| | ) | |
| AHMED ABU KHATALLAH | ) | |
| | ) | |
| _____ | ) | |

**CONSOLIDATED RESPONSE TO THE GOVERNMENT'S MEMORANDUM
CONCERNING THE CLASSIFIED INFORMATION PROCEDURES ACT AND
THE NOTICE OF FILING OF GOVERNMENT'S MOTION TO SET AN EX PARTE
STATUS HEARING PURSUANT TO THE CLASSIFIED PROCEDURES ACT**

On November 5, 2014, the government filed an unsolicited pleading, entitled *Government's Memorandum Concerning the Classified Information Procedures Act* ("CIPA"), purporting to educate the Court about the CIPA. [Dkt #21]. That document is not the innocent "overview" it purports to be, but rather is a slanted propaganda piece designed to suggest that the government's supposed need for secrecy based upon unspecified conjecture about national security risks surpasses the defendant's rights under Rule 16 and the United States Constitution. As but one example, we note that the government declares that "CIPA neither creates any new rights of discovery nor expands the rules governing the admissibility of evidence." However, the government pointedly neglects to mention that CIPA also does not in any way *limit* the government's obligations under Rule 16, the United States Constitution, *Brady* or any other case outlining the government's discovery obligations.[1]

---

[1] See *National Security Investigations & Prosecutions 2d*, Vol 2, § 25:3, p. 127; *United States v. Mejia*, 448 F.3d 436, 455 (D. C. Cir. 2006) ("CIPA § 4 'creates no new rights of ***or limits on*** discovery of a specific area of classified information") (citations omitted) (emphasis added) .

On November 6, 2014, the government filed a Notice of Filing, wherein it indicates that it filed a pleading entitled "Government's Motion to Set an Ex Parte Status Hearing Pursuant to the Classified Information Procedures Act." [Dkt. # 23]. Noticeably absent from the pleading is any citation to authority by which the government seeks an *ex parte* status hearing. The Notice does not indicate what provision of the CIPA the government seeks to invoke, nor does it provide the defendant any indication of whether the government has already provided documents *in camera* to the Court. At a minimum, the government should be directed to serve on counsel a redacted version of the motion so that counsel can understand what proceedings the government is seeking and for what general reason.

Moreover, the defendant objects to the scheduling of an *ex parte* status hearing. Section 4 does not provide for an *ex parte* hearing, but rather indicates that

> [t]he court, upon a sufficient showing, may authorize the United States to delete specified items of classified information from documents to be made available to the defendant through discovery under the Federal Rules of Criminal Procedure, to substitute a summary of the information for such classified documents, or to substitute a statement admitting relevant facts that the classified information would tend to prove. The Court may permit the United States to make a request for such authorization **in the form of a written statement** to be inspected by the court alone.

18 U.S.C. App. 3, § 4 (emphasis added). CIPA § 6 provides procedures providing for a hearing, but that is with respect to documents proposed to be used at trial or a pretrial proceeding, and requires notice to the defendant of the classified information at issue. We also note that CIPA § 4 does not require the Court to permit filing of *ex parte* submissions, it merely authorizes the Court to do so if it deems appropriate. The statute clearly states the "Court *may* permit" not that the Court "shall" conduct *ex parte* proceedings, as in the context of the Foreign Intelligence Surveillance Act. *Compare* CIPA 18 U.S.C. App. 3 § 4 with FISA, 50 U.S.C. § 1806(f). Thus,

CIPA does nothing to change the presumption against *ex parte* proceedings. *See United States v. Rezaq*, 156 F.R.D. 514, 526 (D.D.C. 1994) (under CIPA § 4 and Rule 16(d)(1), "ex parte filings are not required . . . nor even favored"), *modified*, 899 F. Supp. 697 (D.D.C. 1995). As Judge Walton noted,

> It remains this Court's conclusion that . . . questions of materiality can largely be resolved through adversarial proceedings. . . These type[s] of adversarial proceedings best ensure that the defendant's right to a fair trial is preserved. However, Section 4 permits the government to petition the Court for non-disclosure of specified classified information. In such circumstances, the Court would necessarily have to resolve in the first instance whether the information is material to the preparation of the defense. While this Court is disquieted by the prospect of having to make such a determination through ex parte proceedings, and trust[s] that because defense in this case have security clearances the need for such proceedings will be rare, it can certainly envision situations where materiality will have to be addressed in ex parte Section 4 proceedings. . . . However, in those rare situations where the government is compelled to make an ex parte Section 4 filing containing arguments in support of immateriality, the government should fully explain why the ex parte filing is necessary and appropriate. The Court will then carefully scrutinize any such filing to determine whether it should remain an ex parte filing or whether it should be served on the defendant.

*United States v. Libby*, 05-394 (RBW) [Dkt. # 102], p. 3-4.

At a minimum, the Court should first set a sealed Pretrial Conference under CIPA § 2, at which defense counsel, both of whom have the necessary security clearance, could be advised of the issues the government wishes to raise with the Court. Government counsel could discuss broadly the categories of information they apparently do not wish to provide in discovery. This would allow counsel for the defendant, who have the necessary security clearance to view any potentially relevant material, the opportunity to suggest whether there is an objection to the deletion of various categories of material. National security concerns are implicated not in the disclosure of the information to defense counsel, but only if the defense intends to use the classified material. Counsel understands that the defendant may not be given access to classified

material, but that does not suggest that counsel, with appropriate security clearance and under the classified protective order, cannot review the material or at a minimum know of its existence. The appropriate time for the government to object to the defendant having access to that material or the potential disclosure of that material in a public trial is after defense counsel has filed a Section 5 notice of intent to use classified material.

Rule 16 requires the production of discovery if it is material to the defense, regardless of whether it will ultimately be admissible at trial.  CIPA § 4 does nothing to change that standard.  Counsel respectfully notes that the defense, not the government or even the Court, is in the best position to judge whether the material is helpful to the defense.  *Dennis v. United States*, 384 U.S. 855, 875 (1966) ("In our adversary system, it is enough for judges to judge.  The determination of what may be useful to the defense can properly and effectively be made only by an advocate.")  At a minimum, the Court should receive and review an *ex parte* submission from the defense prior to reviewing any materials submitted by the government, and, if the Court is entertaining *ex parte* status hearing, as opposed to a written filing by the government, then the defense similarly seeks an *ex parte* meeting with the Court to discuss our defense needs so that the Court can be in a better position to judge whether the government must disclose the information to defense counsel in the first instance.  This is precisely the process filed in many other cases, including the *Libby* case before Judge Walton.  *United States v. Libby*, 429 F.Supp.2d 18, 26 (D.D.C. 2006).  *See also United States v. Clegg*, 740 F.2d 16, 17 (9th Cir. 1984); *United States v. Poindexter*, 727 F.Supp. 1470, 1479 n. 16); *United States v. North*, 698 F.Supp. 322, 324 (D.D.C. 1988).  Again, this does not prejudge whether the information will ultimately be allowed at trial.

The defendant's concerns about the government's understanding of its discovery

obligations are not unwarranted.  The defense sent the government a lengthy discovery letter on July24, 2014.  Since then, we have repeatedly raised concerns about the paucity of discovery, and the government has repeatedly promised more discovery would be forthcoming, but has failed to deliver in any meaningful way.  On October 17, 2014, the Friday before the last status conference, in an apparent attempt to assuage the defense concerns prior to the hearing, the government produced a disc of classified discovery (with less than 50 pages) and a disc of unclassified discovery that contained only publicly available materials, i.e., news clippings and unclassified reports that were in the public domain.  Moreover, despite the fact that those unclassified materials were all publicly available and, in fact, all in our possession, the government insists that they are subject to the provisions of the protective order.  We have on three separate occasions asked the government to explain how it can fairly suggest publicly available information can be subject to a protective order, and they have failed to do so.  Similarly, the government continues to provide discovery with redactions that make no sense.  Despite the Protective Order and the SAMS in place, the government insists that witnesses would be in danger if their names were revealed.  However, the government has not distinguished between witnesses who may have actual security concerns and witnesses who have written books under their own names and have given dozens of interviews with their identities revealed.

     Since our last court appearance on October 20, 2014, after assurances that significant progress was being made on discovery, the government has provided a few publically available YouTube videos, 90 photos, and a grand total of 15 pages of unclassified material with more than half of the material redacted.  The government has also provided 72 pages of classified material that is meaningless in the format provided and another approximately 40 pages of classified material that has more than 50 percent redactions or blank pages.  It bears noting that while CIPA

provides that the government may request permission from the Court to redact information, there is no provision allowing the government to do so unilaterally.

We urge the Court to deny the government's motion for an *ex parte* status hearing and to schedule a sealed status conference pursuant to CIPA § 2 at which these issues can be addressed fully.

                                            Respectfully submitted,

                                            A.J. KRAMER
                                            FEDERAL PUBLIC DEFENDER

                                            _____

                                            MICHELLE PETERSON
                                            MARY MANNING PETRAS
                                            Assistant Federal Public Defenders
                                            625 Indiana Ave., NW   Ste. 550
                                            Washington, DC  20004
                                            202/208-7500