UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Crim. No.: 14-141 (CRC) |
| | : | |
| AHMED SALIM FARAJ ABU KHATALLAH, | : | |
| | : | |
| also known as "Ahmed Abu Khatallah," | : | |
| also known as "Ahmed Mukatallah," | : | |
| also known as "Ahmed Bukatallah," | : | |
| also known as "Sheik," | : | |
| Defendant. | : | |

**GOVERNMENT'S SUPPLEMENTAL MEMORANDUM OF LAW
CONCERNING THE CLASSIFIED INFORMATION PROCEDURES ACT**

On November 15, 2014, the government filed a Memorandum Concerning the Classified Information Procedures Act ("CIPA") [Dkt. #21]. To assist with pending and anticipated CIPA litigation in this matter, the government hereby supplements that earlier filing as follows:

**I.  CIPA provides the framework for the discovery and admissibility of classified material.**

CIPA governs how federal courts address and process pretrial matters concerning the discovery, admissibility, and use of classified information in criminal cases. *See United States v. Baptista-Rodriguez*, 17 F.3d 1354, 1363 (11th Cir. 1994). CIPA's fundamental purpose is to "'harmonize a defendant's right to obtain and present exculpatory material upon his trial and the government's right to protect classified material in the national interest.'" *United States v. Pappas*, 94 F.3d 795, 799 (2d Cir. 1996) (*quoting United States v. Wilson*, 571 F. Supp. 1422, 1426 (S.D.N.Y. 1983)). By its plain terms, CIPA "'evidence[s] Congress's intent to protect

classified information from unnecessary disclosure at any stage of a criminal trial'" while simultaneously ensuring that a defendant's right to present evidence in his defense is not compromised.  *United States v. Apperson*, 441 F.3d 1162, 1193 n.8 (10th Cir. 2006) (*quoting United States v. O'Hara*, 301 F.3d 563, 568 (7th Cir. 2002)).

"CIPA was not, however, intended to expand the traditional rules of criminal discovery under which the government is not required to provide criminal defendants with information that is neither exculpatory nor, in some way, helpful to the defense."  *United States v. Varca*, 896 F.2d 900, 905 (5th Cir. 1990).  CIPA creates no new rule of evidence regarding admissibility, but rather, the statute mandates procedures accommodating the government's privilege in classified information.  *See United States v. Yunis*, 867 F.2d 617, 623 (D.C. Cir. 1989); *United States v. Mejia*, 448 F.3d 436, 455 (D.C. Cir. 2006); *United States v. Johnson*, 139 F.3d 1359, 1365 (11th Cir. 1998); *Baptista-Rodriguez*, 17 F.3d at 1363-64.  Nor does it limit the government's existing discovery obligations.  *Mejia*, 448 F.3d at 455 ("CIPA § 4 'creates no new rights of or limits on discovery of a specific area of classified information'") (citations omitted).

**II.    The Executive Branch has sole authority to classify information.**

The Executive Branch of the United States has a "'compelling' interest in withholding national security information from unauthorized persons in the course of executive business."  *Department of the Navy v. Egan*, 484 U.S. 518, 527 (1988) (*quoting Snepp v. United States*, 444 U.S. 507, 509 n.3 (1980)).  As the Supreme Court has repeatedly stressed, courts have been "reluctant to intrude upon the authority of the Executive in . . . national security affairs."  *Id.* at 530; *see also Center for Nat'l Sec. Studies v. United States Dep't of Justice*, 331 F.3d 918,

926-27 (D.C. Cir. 2003). Accordingly, courts have recognized that the determination of whether to classify information, and the proper classification thereof, is a matter committed solely to the Executive Branch: "[T]he government . . . may determine what information is classified. A defendant cannot challenge this classification. A court cannot question it." *United States v. Smith*, 750 F.2d 1215, 1217 (4th Cir. 1984), *rev'd on other grounds*, 780 F.2d 1102 (4th Cir. 1985) (*en banc*).

### III. The government may move *ex parte* and *in camera* for an order restricting discovery.

An *ex parte*, *in camera* procedure is appropriate under CIPA to protect classified information.[1] *See, e.g., Yunis*, 867 F.2d at 620 (holding an *ex parte*, *in camera* hearing in which the government explained the specific damage to national defense if information were disclosed); *United States v. Klimavicius-Viloria*, 144 F.3d 1249, 1261-62 (9th Cir. 1998) ("In a case involving classified documents, however, ex parte, in camera hearings in which government counsel participates to the exclusion of defense counsel are part of the process that the district court may use in order to decide the relevancy of the information."); *United States v. Sarkissian*, 841 F.2d 959, 965-66 (9th Cir. 1988) ("Nowhere does CIPA require the government to file a public claim of privilege before making an in camera ex parte submission.").

Rule 16 similarly contemplates *ex parte*, *in camera* proceedings. *See Mejia*, 448 F.3d at 455-58 (*ex parte*, *in camera* review of classified material under CIPA § 4 and Rule 16(d)).

---

[1] CIPA's legislative history makes clear that Congress viewed the *ex parte* nature of the proceeding to be important. As the record of the House of Representatives reveals, "since the government is seeking to withhold classified information from the defendant, an adversary hearing with defense knowledge would defeat the very purpose of the discovery rules." H.R. Rep. No. 96-831, at 27 n.22 (1980). The same is true with respect to Rule 16(d)(l): "it would defeat the purpose of the protective order if the government were required to make its showing in open court. The problem arises in its most extreme form where matters of national security are involved." Rule 16 Advisory Committee Notes, 1966 Amendments, Subdivision (e).

Federal Rule of Criminal Procedure 16(d)(l) provides that "[a]t any time, the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief," and that "[t]he court may permit a party to show good cause by a written statement that the court will *inspect ex parte*." Fed. R. Crim. P. 16(d)(l) (emphasis added); *see also United States v. Innamorati*, 996 F.2d 456, 487 (1st Cir. 1993) ("[Rule] 16(d)(l) expressly authorizes the court to deny discovery of information sought by a defendant based on an ex parte showing by the government of the need for confidentiality."). According to the Advisory Committee Notes, "[a]mong the considerations to be taken into account" when deciding a motion under Rule 16(d)(1) is "the protection of information vital to the national security." Rule 16 Advisory Committee Notes, 1966 Amendments, Subdivision (e).

Congress also provided a mechanism in CIPA for the United States to move *ex parte* and *in camera* for permission to restrict discovery of classified information. The purpose of CIPA is "'to protect classified information from unnecessary disclosure at any stage of a criminal trial." *O'Hara*, 301 F.3d at 568. Specifically, CIPA Section 4 provides, *inter alia*:

> The court may permit the United States to make a request for [relief from discovery] in the form of a written statement to be inspected by the court alone. If the court enters an order granting relief following such an ex parte showing, the entire text of the statement of the United States shall be sealed and preserved in the records of the court to be made available to the appellate court in the event of an appeal.

18 U.S.C. App. III § 4 (emphasis added). CIPA Section 4 was enacted "'to clarify[] the court's powers under Federal Rule of Criminal Procedure 16(d)(l) . . . because some judges have been reluctant to use their authority under the rule." S. Rep. No. 96-823, at 6 (1980), as reprinted in 1980 U.S.C.C.A.N. 4294, 4299-4300.

Courts have consistently upheld the *ex parte* and *in camera* nature of motions under Rule 16(d)(l) and CIPA Section 4. *See, e.g., Mejia*, 448 F.3d at 457-58 (approving CIPA Section 4 *ex parte* hearing); *United States v. Amawi*, 695 F.3d 457, 472 (6th Cir. 2012) ("every court that has considered this issue has held that CIPA permits ex parte hearings"); *United States v. Campa*, 529 F.3d 980, 995 (11th Cir. 2008) ("The right that section four confers on the government would be illusory if defense counsel were allowed to participate in section four proceedings because defense counsel would be able to see the information that the government asks the district court to keep from defense counsel's view."); *O'Hara*, 301 F.3d at 568-69 (district court properly conducted *ex parte*, *in camera* review to determine whether classified information was discoverable); *Sarkissian*, 841 F.2d at 965 (*ex parte* proceedings concerning national security information are appropriate under CIPA Section 4); *United States v. Pringle*, 751 F.2d 419, 427-28 (1st Cir. 1984) (holding that *ex parte*, *in camera* inspection of documents by district court was authorized under Section 4 and approving of protective order issued thereunder), *vacated and remanded on other grounds sub nom. United States v. McAfee*, 479 U.S. 805 (1986); *United States v. Pelton*, 578 F.2d 701, 707 (8th Cir. 1978) (*ex parte*, *in camera* proceedings appropriate under Rule 16(d)(1) where prosecutors were concerned about safety of individuals if certain tapes were disclosed to defense); *United States v. Abu-Jihaad*, 2007 WL 2972623, at *1 (D. Conn. Oct. 11, 2007) ("While the Court is fully cognizant of the need to protect Defendant's due process rights and ensure both the appearance and reality of fairness, the Court believes that in this particular instance, it is not only appropriate but necessary to proceed on an ex parte basis in view of the classified nature of the information at issue."); *United States v. Rahman*, 870 F. Supp. 47, 49, 53 (S.D.N.Y. 1994) (same).

CIPA Section 4 requires no particular showing before the Court may grant a request to proceed *ex parte* and *in camera*. See *Sarkissian*, 841 F.2d at 965-66; *Pringle*, 751 F.2d at 425-27; *cf. United States v. Libby*, 429 F. Supp 2d 46, 48 (D.D.C. 2006) (clarifying court's earlier restriction on *ex parte* filings (429 F.Supp2d 18, 24-25): "the Court cannot preemptively constrain the government in any manner from making filings it deems appropriate, necessary, and permissible under Section 4."); *United States v. Ahmad*, 2013 WL 1899792, at *2 (D. Conn. May 1, 2013) ("in *United States v. Libby* [citation omitted] . . ., the court said explicitly that there is no requirement under CIPA to show exceptional circumstances before proceeding ex parte."). In addition, courts have recognized that although Rule 16(d)(1) and CIPA Section 4 speak only of the government submitting a written statement, "ex parte, in camera hearings in which the government counsel participates to the exclusion of defense counsel are part of the process that the district court may use," particularly "if the court has questions about the confidential nature of the information or its relevancy." *Klimavicius-Viloria*, 144 F.3d at 1261.

### IV.   The government's classified information privilege can preclude discovery of otherwise relevant evidence.

The United States possesses a common law privilege in classified information similar to that adopted for confidential informants by the Supreme Court in *Roviaro v. United States*, 353 U.S. 53 (1957). In *Roviaro*, the defendant sought the identity of a confidential informant who was the "sole participant, other than the accused, in [the drug] transaction charged" in the indictment. *Id.* at 64. The Supreme Court recognized the government's privilege in protecting the identity of confidential informants, but held that "[w]here the disclosure of an informer's identity, or of the contents of his communication, is *relevant and helpful to the defense of an accused*, or is essential to a fair determination of a cause, the privilege must give way." *Id.* at 60-61 (emphasis added).

6

The Supreme Court explained that determining whether the privilege should be breached ultimately

> calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense.  Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

*Id.* at 62.

The privilege articulated in *Roviaro* has been applied to cases involving classified information in this Circuit.  *See, e.g.*, *Yunis*, 867 F.2d at 622; *United States v. Rezaq*, 134 F.3d 1121, 1142 (D.C. Cir. 1998); *Mejia*, 448 F.3d at 455; *see also United States v. Abu-Jihaad*, 630 F.3d 102, 140 (2d Cir. 2010) ("The privilege [CIPA] presupposes has its origins in the common-law privilege against disclosure of state secrets").  In *Yunis*, which involved the hijacking of an international flight, the production of classified audio recordings of the defendant's conversations with an undercover law enforcement asset – some of which were relevant to the charges at issue – were at issue.  The United States sought to produce some of the statements and moved under CIPA to withhold the balance.  *Id.* at 619-20.  The district court ordered the government to produce all of the statements, and, pursuant to CIPA § 7, the government appealed.  *Id.* at 621.

In reversing the district court, the *Yunis* court set out a three-part test to be used to evaluate a defendant's request for the disclosure of classified information:  (1) whether the information is relevant, *id.* at 623; (2) whether "the assertion of privilege by the government is at least a colorable one" *id.*; and (3) whether the information is helpful to the defense.  *Id.*  With respect to the third prong of the test, the *Yunis* court explained that,

7

> [C]lassified information is not discoverable on a mere showing of theoretical relevance in the face of the government's classified information privilege . . . [T]he threshold for discovery in this context . . . requires that a defendant seeking classified information, like [the] defendant seeking the informant's identity in *Roviaro*, [be] entitled only to information that is at least "helpful to the defense of the accused."

*Id.* at 623 (*quoting Roviaro*, 353 U.S. at 60-61); *see also id.* at 625 (noting that "relevant and helpful" phrase was preferred articulation of term "materiality" also used in *Roviaro*). Subsequently, our Circuit has noted that the third prong is the most "significant" part of the test. *Mejia*, 448 F.3d at 456 (The court "carefully examined the classified information at issue and conclude[d] that it 'falls far short' of the 'helpful or beneficial character' necessary to meet the threshold showing for overcoming the privilege."). Additionally, if the materials truly are relevant and helpful to the defense, the Court should then balance the government's interest in protecting the national security against the defendant's purported need for classified information. *See, e.g., United States v. Smith*, 780 F.2d 1102, 1105 (4th Cir. 1985) (*en banc*); *Sarkissian*, 841 F.2d at 965.[2]

Before determining whether the materials sought by the defense were "relevant and helpful," the *Yunis* court held that the United States had a colorable claim that the discovery sought contained classified information. *Id.* at 623. In so holding, the court found the United States had an interest in protecting from disclosure not only the contents of the conversations, but also the sources and methods used to collect them: "'The government has a compelling interest in protecting both the secrecy of information important to our national security *and the appearance of confidentiality so essential to the effective operation of our foreign intelligence service.*'" *Id.*

---

[2]   Although the *Yunis* court recognized that *Roviaro* "suggests such a balancing test" and noted that two circuits have applied the balancing test in the CIPA context, it did not reach this issue. *Yunis*, 867 F.2d at 625.

(*citing CIA v. Sims*, 471 U.S. 159, 175 (1985)) (emphasis added).  The court also noted that the mere fact that certain conversations were recorded could disclose classified information about the United States' "intelligence-gathering capabilities."  *Id.* Specifically, the *Yunis* court recognized that – as in cases where the United States invokes its informant privilege – much of the government's national security interest "lies not so much in the contents of the [Rule 16] conversations, as in the time, place and nature of the government's ability to intercept the conversations at all."  *Id.*; *see also United States v. Felt*, 491 F. Supp. 179, 183 (D.D.C. 1979) ("Protection of sources, not information, lies at the heart of the claim [of privilege] by the Attorney General.").  The court found that details revealed in surveillance "would make all too much sense to a foreign counter-intelligence specialist who could learn much about this nation's intelligence-gathering capabilities from what the documents withheld from discovery revealed about sources and methods."  *Yunis*, 867 F.2d at 623.

**V.     Government may withhold classified information from cleared counsel.**

The mere fact that counsel has a clearance does not confer automatic access to classified national defense information.  *See, e.g.*, *United States v. Daoud*, 755 F.3d 479, 484 (2014) ("It's also a mistake to think that simple possession of a security clearance automatically entitles its possessor to access to classified information that he is cleared to see.").[3]  Instead, under well-established case law, classified material may be (1) summarized, *see Rahman*, 870 F. Supp at 50 (under CIPA § 4 government may provide substance of information rather than document itself); or (2) withheld from cleared counsel in discovery pursuant to CIPA Section 4 provided that the

---

[3]     Indeed, even government employees with a security clearance must still establish a "need-to-know" classified information before gaining access.  Executive Order 13526 defines the need-to-know principle as "a determination within the executive branch in accordance with directives issued pursuant to this order that a prospective recipient requires access to specific classified information in order to perform or assist in a lawful and authorized governmental function," at § 6.1(dd).

9

United States has properly invoked the classified information privilege. *See Yunis*, 867 at 623.

**VI. Conclusion.**

The government hereby submits the foregoing supplement to its previously filed Memorandum Concerning the Classified Information Procedures Act.

        Respectfully submitted,

        CHANNING D. PHILLIPS
        UNITED STATES ATTORNEY


        By:_____/s/_____
        Michael C. DiLorenzo
        MD Bar No. 931214 0189
        Julieanne Himelstein
        D.C. Bar No. 417136
        Opher Shweiki
        D.C. Bar No. 458776
        John Crabb Jr.
        N.Y. Bar No. 2367670
        Assistant United States Attorneys
        National Security Section
        United States Attorney's Office
        555 4th Street, N.W.
        Washington, D.C. 20530
        (202) 252-7809
        michael.dilorenzo@usdoj.gov