UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | |
| | : | |
| v. | : | **Crim. No.: 14-cr-141 (CRC)** |
| | : | |
| | : | |
| | : | |
| AHMED SALIM FARAJ ABU | : | |
| KHATALLAH, | : | |
| | : | |
| also known as "Ahmed Abu Khatallah," | : | |
| also known as "Ahmed Mukatallah," | : | |
| also known as "Ahmed Bukatallah," | : | |
| also known as "Sheik," | : | |
| | : | |

**DECLARATION OF SUPERVISORY SPECIAL AGENT STEFANIE RODDY**

STEFANIE RODDY, being duly sworn, hereby states the following:

1.      I am a Supervisory Special Agent of the Federal Bureau of Investigation ("FBI"), currently assigned to the Counterterrorism Division of the FBI's New York Field Office.   Since November 2016, I have supervised an Extraterritorial Squad responsible for the investigation into the September 11-12, 2012 attack on the U.S. Special Mission and Annex in Benghazi, Libya ("Attack"), and which resulted in the criminal charges currently pending against defendant in this case.   As the supervisor of the FBI squad responsible for this investigation, I regularly speak with the case agents about the investigation, review case-related reports, and participate in case-related briefings.   I am therefore intimately familiar with the evidence in this case.

2.      I submit this declaration in support of the Government's Motion to Allow Certain Government Witnesses to Testify Using Pseudonym Instead of Given Name.

3.      In this case, the defendant, Ahmed Salim Faraj Abu Khatallah, a Libyan national,

1

has been charged by federal indictment for his participation in the September 11-12, 2012, terrorist attack on United States Special Mission and Annex in Benghazi, Libya ("Attack"), which resulted in the deaths of four Americans.  The investigation has revealed that the Attack was carried out by Libyan-based Islamist extremists, including members of Ansar Al-Sharia ("AAS") and Ubaydah Ibn Al Jarrah ("UBJ").  The defendant was the commander of UBJ, an extremist brigade closely associated with AAS.  At the time of the attack, AAS and UBJ were armed militias that held anti-Western views and advocated the establishment of Sharia law in Libya.  The United States Department of State ("DOS") designated AAS in Benghazi a Foreign Terrorist Organization on January 10, 2014.  The DOS noted in its designation that AAS Benghazi has been involved in terrorist attacks against civilian targets, frequent assassinations, and attempted assassinations of security officials and political actors in eastern Libya, as well as the Attack.  The defendant was also designated by the U.S. government as a Specially Designated Global Terrorist.

4.    The investigation revealed that in the days leading up to the Attack, the defendant voiced concerns about and opposition to the presence of an American facility in Benghazi.  On September 11, 2012, at approximately 9:45 p.m., a group of twenty or more armed men assembled outside the Special Mission and then aggressively breached the Mission gate.  Several members of UBJ and AAS have been identified among this group, many of whom are known associates of the defendant.  The initial attackers were armed with AK-47-type rifles, handguns, and rocket-propelled grenade launchers.  After the initial breach, the attackers stole a Mission vehicle, forcibly entered and damaged Mission buildings, and stole Mission property.  During this initial attack, buildings within the Mission were set on fire.  The fires that were set during the attack ultimately led to the deaths of Ambassador J. Christopher Stevens and DOS Information

2

Management Officer Sean Patrick Smith.  The remaining DOS personnel were able to escape to a nearby U.S. facility, known as the Annex.  It also soon came under attack, which continued throughout the early morning hours of September 12, 2012, culminating in a precision mortar attack that resulted in the deaths of Security Officers Tyrone Snowden Woods and Glen Anthony Doherty.

5.    The investigation revealed that shortly after the U.S personnel evacuated from the Mission, the defendant entered the compound and supervised the removal of material from the scene by numerous men, many of whom were armed.  Following the attack on the Mission, the defendant returned to an AAS camp in Benghazi, where a large group of armed AAS members began assembling for the attack on the Annex.

6.    The investigation further revealed that in the days that followed the Attack, the defendant attempted to obtain various types of equipment, including weapons, to defend himself from feared American retaliation for the Attack.  In late 2013, the defendant expressed anger that the U.S. conducted a capture operation of a Libyan fugitive in Tripoli, and the defendant took steps to retaliate against the U.S. by targeting U.S. interests in the region.  The defendant also expressed concern that the U.S. might try to capture him in Libya and, as a result, he increased his personal security.

7.    AAS and other Libyan-based extremists have targeted individuals believed to be cooperating with the United States in its investigation into the Attack.  In August 2013, after it was reported in the press that the United States had charged the defendant for his participation in the Attack, a threat was posted on-line by a Libyan militia leader.  The militia leader stated that the Americans leveled accusations against the defendant for killing the U.S. Ambassador in the

3

Attack, that a hair from the defendant is "more precious than all of the U.S. ambassadors in the world," and that any attempt "to harm any of our mujahideen will make us scorch the earth beneath the feet of every American." The militia leader extended the threat to any potential witnesses, stating, "I tell the Libyan people that our response will be harsh against any collaboration or betrayal of the mujahideen for the benefit of American intelligence, and if we receive any information about an individual being an American agent, he will be killed alongside with one of his siblings and their family will be banished from Libya." There have also been credible reports that Libyan nationals who were working with or associated with the United States since the Attack have been targeted by extremist groups in Benghazi.

8. The FBI has located two witnesses – identified as W-186 and W-236 – who are cooperating with the United States in this investigation and are willing to testify in court. However, by cooperating in connection with the investigation, they have been and will be exposed to a significant risk of harm.

9. W-186 and W-236 are both Libyan nationals, with strong connections to eastern Libya, including family members who remain in the region. Both witnesses are also well-known to the defendant and many of his associates who remain free in eastern Libya. These associates, which include members of UBJ and AAS, have access to weapons – including AK-47 type assault rifles and rocket propelled grenades – and have a proclivity to violence. In the summer of 2014, shortly after the capture of the defendant in Libya by U.S. forces, associates of the defendant accused W-236 of being complicit in the capture of the defendant and burned his house to the ground. W-236 was forced to flee eastern Libya with W-236's family. Since the defendant's capture, both witnesses have received threats from Libyan extremists – to include associates of the

4

defendant – on suspicion of cooperating with the United States in this matter.

10.     W-186 and W-236 have been placed in significant peril by agreeing to cooperate with the United States in this prosecution.   If their identities were to be made public, extremists in Libya could well take vengeance on the witnesses and/or their families.   The risk of public exposure is compounded by the fact that this case has received intense media scrutiny in the United States and Libya.   It is the opinion of the FBI that this risk can be mitigated by allowing the witnesses to testify using pseudonyms.

I declare under penalty of perjury this 1st day of October 2017, that the foregoing information is true and correct to the best of my information and belief.

STEFANIE RODDY
FBI Supervisory Special Agent

5